Karen SOUTHERLAND,
Plaintiff–Appellee,

v.

ARGONAUT INSURANCE COMPANY,
Defendant–Appellant.

No. 88CA1488.

Colorado Court of Appeals,
Div. II.

June 14, 1990.

James A. Carleo, Colorado Springs, for plaintiff-appellee.

Post & Schell, F. James Gallo, Denver, for defendant-appellant.

Opinion by Judge DUBOFSKY.

Defendant, Argonaut Insurance Co., appeals the judgment entered on a jury verdict in favor of plaintiff, Karen Southerland, on her claim of breach of defendant's duty of good faith in processing her workmen's compensation claim. The jury returned a verdict of $60,000 in compensatory damages and $25,000 in punitive damages. We affirm.

On February 26, 1985, while plaintiff was working for defendant's insured, she severely injured her left, dominant, hand and arm. In reaction to the injury she developed a chronic medical condition called reflex sympathetic dystrophy. Defendant filed a General Admission of Liability, admitting that plaintiff had been injured on the job and was entitled to workmen's compensation benefits. On March 7, 1985, defendant commenced bi-weekly payments of total disability benefits, from the date of the injury forward.

In October 1985, plaintiff, because of her injury and various domestic difficulties, was in dire economic circumstances. She was still totally disabled and experiencing severe and chronic pain in her injured arm which effectively prevented its use for any purpose. That disability, and the breakup of her marriage, caused the plaintiff to move to Texas to get help from her family. The rehabilitation evaluation began prior to plaintiff's move but had not been completed.

After plaintiff's move, defendant petitioned the Workmen's Compensation Division to terminate plaintiff's benefits, arguing that plaintiff's leaving the state demonstrated a voluntary withdrawal from vocational rehabilitation. The ALJ rejected defendant's contentions. After the hearing defendant engaged a private investigator to monitor the activities of plaintiff.

After these events, and because of defendant's chronic late payments, underpayment of wage benefits, and failure to institute rehabilitation benefits in a timely manner, plaintiff commenced this action.

I.

Defendant argues the trial court erred in denying its motion for a directed verdict. We disagree.

Colorado recognizes the tort of breach of an insurer's duty to handle a workmen's compensation claim in good faith. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985).

In determining a motion for a directed verdict, the trial court must view the evi-

dence in the light most favorable to the party against whom the motion is directed. *Bloskas v. Murray*, 646 P.2d 907 (Colo. 1982). When the plaintiff shows a prima facie case, even though the facts are in dispute, it is for the jury and not the court to resolve the conflict. *Romero v. Denver & Rio Grande Western R.R. Co.*, 183 Colo. 32, 514 P.2d 626 (1973).

■ Here, a prima facie case was presented. The numerous instances of misconduct by defendant, including chronic late payments, filing a petition to terminate compensation benefits, continuous underpayment of benefits due plaintiff, refusal to provide information requested by plaintiff so she could properly evaluate the amount of benefits she was entitled to receive, general uncooperativeness, and delays in commencing rehabilitation, constitute evidence sufficient to support the jury's verdict. *See Travelers Insurance Co. v. Savio, supra*. Thus, the verdict of the jury will not be disturbed. *See Romero v. Denver & Rio Grande Western R.R. Co., supra*.

■ Defendant argues that as a matter of law, it acted within its legal rights when it sought to terminate plaintiff's benefits after she moved from Colorado to Texas, and it relies on a Colorado industrial claims administrative decision in support of its argument. However, that decision concerned a situation in which a claimant was repeatedly uncooperative with ongoing rehabilitation training and changed to a different school in a different state. Thus, it has little similarity to the situation here and does not provide legal support for defendant's argument.

Here, rehabilitation had not begun, and defendant has not demonstrated that plaintiff's actions were intentionally uncooperative or even harmful. Moreover, the dire financial and domestic circumstances claimant was in when she moved to Texas is a legitimate and compelling reason for the move. *See Winters v. Industrial Commission*, 736 P.2d 1256 (Colo.App.1986).

We further note that the evidence demonstrates that plaintiff came from Texas to Colorado for the hearing on the motion to terminate benefits and the trip was emotionally and financially very difficult for her. Furthermore, the petition to terminate benefits was only one of the factors relied on by the plaintiff to prove defendant's bad faith.

■ Defendant also argues that the trial court failed to grant its motion for summary judgment made earlier in the proceedings. The denial of a summary judgment motion, however, may not be considered on appeal from a final judgment entered after trial on the merits. *Holter v. Moore & Co.*, 681 P.2d 962 (Colo.App.1983).

## II.

### A.

Defendant next argues that the trial court erred by expanding the issues at trial beyond the contents of the pleadings. We disagree.

Defendant objected to admission of several instances of bad faith conduct, on the ground that these acts were not listed in plaintiff's complaint. Specifically, defendant objected to evidence of late payment of disability checks, incompetent follow-up care, inadequacy of rehabilitation efforts in Texas, and delays in paying plaintiff's tutor.

Defendant does not claim that the legal basis for the action was improperly pled, *i.e.*, "breach of the insurance carrier's obligation and implied duty of good faith and fair dealing;" rather, defendant argues that plaintiff is limited in her evidence to those examples which she used in the complaint. We disagree with this contention.

■ The purpose of a complaint is to provide defendant with reasonable notice of the general nature of the matter presented. C.R.C.P. 8(a); *DiChellis v. Peterson Chiropractic Clinic*, 630 P.2d 103 (Colo.App. 1981). It is sufficient if the pleader identifies the transaction which forms the basis of her claim. *Brown v. Central City Opera House Ass'n*, 36 Colo.App. 334, 542 P.2d 86 (1975), *aff'd*, 191 Colo. 372, 553 P.2d 64 (1976). Therefore, since a com-

plaint need not list specific examples of defendant's misconduct, *a fortiori*, there is no requirement that the complaint list all examples.

Defendant had the opportunity to prevent any surprise at trial by utilizing the discovery rules to determine what evidence would be presented at trial. *See* C.R.C.P. 26; *Hawkins v. District Court*, 638 P.2d 1372 (Colo.1982). Instead, here the defendant chose not to engage in any pretrial discovery and therefore, cannot claim surprise.

Moreover, defendant does not allege that plaintiff failed to disclose information required by the discovery rules. *See Dolan v. Mitchell*, 179 Colo. 359, 502 P.2d 72 (1972). We, therefore, conclude that the trial court properly admitted the additional instances of misconduct which were not specifically referred to in the complaint.

### B.

■ Defendant argues the trial court erred in allowing into evidence several instances of bad faith conduct which occurred after the filing of the complaint, *i.e.*, late payments of plaintiff's bi-weekly benefits and conduct pertaining to the rehabilitation process in Texas. We disagree.

The admission of this evidence did not state a new cause of action, change the theory of the action, or cure a defective pleading. Indeed, the continued late payments and ongoing difficulties in securing rehabilitation were merely a continuation of the same difficulties that preceded the filing of the complaint and were relevant as evidence of defendant's habitual pattern in dealing with plaintiff. Accordingly, we determine that introduction of the subsequent evidence of misconduct was not an abuse of the court's discretion. *See Publix Cab Co. v. Colorado National Bank*, 139 Colo. 205, 338 P.2d 702 (1959).

Defendant had actual or constructive notice of the subsequent activities as they were performed by either defendant's employees or agents. *See Stortroen v. Beneficial Finance Co.*, 736 P.2d 391 (Colo. 1987). Furthermore, defendant failed to seek a continuance to avoid any prejudice

to its case arising from the challenged evidence. *See Eagle River Mobile Home Park, Ltd. v. District Court*, 647 P.2d 660 (Colo.1982); *Crist v. Goody*, 31 Colo.App. 496, 507 P.2d 478 (1972). Under these circumstances, we conclude that the trial court did not abuse its discretion in admitting this evidence. *Publix Cab Co. v. Colorado National Bank, supra*.

### III.

### A.

■ Defendant argues the trial court erred in allowing plaintiff's experts to testify as to the standard of good faith conduct of an insurer. We perceive no error.

■ Plaintiff's experts were both attorneys with extensive experience in worker's compensation. For years both attorneys had dealt extensively with defendant and other insurance companies over issues similar to the ones here. Defendant implicitly argues that only persons who have worked for insurance companies are qualified to be experts on the insurance business. We reject the notion that only present or former employees of the insurance industry are qualified to render expert opinions about its operations.

■ The qualification of an expert witness to testify is within the trial court's discretion and will not be disturbed without showing an abuse of that discretion. CRE 702; *White v. People*, 175 Colo. 119, 486 P.2d 4 (1971). A trial court may accept an attorney as an expert witness when his "knowledge, skill, expertise, training, or education" so qualifies him. *See United States v. Ruffin*, 575 F.2d 346 (2nd Cir. 1978).

Here, there was an adequate foundation to demonstrate the expert witnesses' familiarity with and knowledge of insurance industry standards in meeting the companies' responsibilities to injured workers. Accordingly, the trial court did not abuse its discretion in permitting plaintiff's witnesses to express opinions as to the bad faith conduct of defendant.

### B.

Defendant next argues that the court erred in permitting plaintiff's experts to testify by using an incorrect standard. We disagree.

CRE 704 allows expert witnesses to give opinions which encompass the ultimate questions presented to the jury. *See Zertuche v. Montgomery Ward & Co.*, 706 P.2d 424 (Colo.App.1985). Experts routinely testify as to whether a defendant's conduct violated the accepted standards of practice of the legal, medical, dental, and engineering professions. *See, e.g., Mudd v. Dorr*, 40 Colo.App. 74, 574 P.2d 97 (1977).

Here, the experts' testimony referred to the standards for insurance companies stated in *Travelers Insurance Co. v. Savio, supra*, as the basis for their opinion. These standards in turn served as the basis for one of the key jury instructions in the case. Therefore, we find no error with an expert applying the legal or industry standard to the facts in determining if a defendant's conduct was violative of the standards of a profession or industry.

Here, the expert testified that he was applying a standard of reasonableness in evaluating the insurance company's conduct. The jury instruction regarding the duty of defendant stated in relevant part:

> "This duty is breached when benefits due are unreasonably denied or withheld and the insurance company knows its conduct has no reasonable basis or it acts in reckless disregard of that fact." (emphasis in original)

The standard used by the expert was an incomplete statement of the entire standard but was, under the circumstances here, not prejudicial error.

We reach this conclusion for several reasons. First, the jury was told while the expert was testifying that it should apply the law as stated in the instructions in deciding the case. This admonition had the effect of telling the jury to disregard any misstatement of the applicable standard. Second, defense counsel on cross-examination could have readily pointed out the complete *Savio* standard. Moreover, the objection made to the testimony failed to enunciate the proper standard which the experts should follow. *See Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579 (Colo.1984). Finally, the jury was properly and completely instructed as to the proper standard under the *Savio* holding, and there is a presumption the jury followed the instructions in reaching its verdict. *See Newbury v. Vogel*, 151 Colo. 520, 379 P.2d 811 (1963).

Under these circumstances we conclude that the court's error, if any, was not prejudicial and therefore does not warrant reversal. C.R.C.P. 61; *see Francis v. O'Neal*, 127 Colo. 432, 257 P.2d 973 (1953).

### IV.

Defendant argues it was error to allow plaintiff's expert to testify that defendant had been regularly late in providing compensation checks to his clients. We disagree.

Evidence of other wrongs or acts are admissible to prove motive and intent. CRF 404(b); *see College v. Scanlan*, 695 P.2d 314 (Colo.App.1985). The trial court is afforded substantial discretion in admitting evidence of prior acts. *See People v. Hogan*, 703 P.2d 634 (Colo.App.1985).

Here, the evidence was properly admitted for the purpose of demonstrating an ongoing pattern of purposeful delays in paying benefits and to prove defendant's economic motive in causing the delays here. Routine late payments of checks can confer a considerable monetary benefit to a major insurance company. Defendant was, of course, free to refute this testimony by presenting evidence that the expert was factually incorrect and that there was no pattern or motive.

### V.

Defendant next argues that the jury instructions were inadequate because they did not inform the jurors that bad faith requires proof of the standard of conduct in the insurance industry. We disagree.

**1108**

Instructions concerning the burden of proof must be considered as a whole. *Montgomery Ward & Co. v. Kerns*, 172 Colo. 59, 470 P.2d 34 (1970). An instruction which is merely incomplete or ambiguous may be cured by other instructions. *See Aspen Plaza Co. v. Garcia*, 691 P.2d 763 (Colo.App.1984).

We conclude that one of the instructions given, when considered with the others, adequately instructed the jury on plaintiff's burden of proof. That instruction states:

> "The determination of whether the defendant breached the duty of good faith and fair dealing must be made based upon the information available to the defendant at the time of the actions claimed to be wrongful and *the standards of conduct then existing in the industry*." (emphasis added)

## VI.

Defendant finally argues that the evidence is insufficient to prove wanton or reckless conduct. We disagree.

Defendant's chronic late and underpayment of benefits, its efforts to terminate plaintiff's benefits, its refusal to cooperate with plaintiff and her attorney, its refusal to provide economic information, and its subsequent delays in providing vocational rehabilitation and in paying the rehabilitation bills are all factors from which a jury could conclude that defendant behaved in a wanton and willfull manner. Accordingly, the jury's verdict is binding on appeal. *See City of Aurora v. Loveless*, 639 P.2d 1061 (Colo.1981).

Defendant's other contentions are without merit.

Judgment affirmed.

SMITH and MARQUEZ, JJ., concur.