No. 21144.

CELEBRITIES BOWLING, INC. *v.* OPAL M. SHATTUCK.
(414 P.2d 657)

Decided May 23, 1966.

SHELDON and NORDMARK, JOSEPH C. JAUDON, for plaintiff in error.

VINCENT CRISTIANO and ROBERT BUGDANOWITZ, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

PLAINTIFF, Opal M. Shattuck, brought this action to recover damages from the defendant, Celebrities Bowling, Inc., for injuries which she sustained as a result of a fall down a flight of stairs located on defendant's property. The parties will be referred to as plaintiff and defendant.

The record discloses that plaintiff entered the area of defendant's enclosed swimming facility in order that she might watch other members of her family swim. Plaintiff, accompanied by her daughter, gained access to a balcony area overlooking the pool. From this point, the two women intended to make their way down the flight of stairs in question and thence to a spectator's section which would give them a clearer vantage point of the pool. These were the only stairs available to anyone desirous of gaining access to the spectator's section.

It appears from the testimony that the stairs were constructed of concrete with a roughened or brushed surface. The dimension of the steps indicated that they were 5½ feet long, 18 inches in width and had risers approximately 5 or 6 inches. Constant traffic had caused the middle portion of each step to be worn smoother, at least in some degree, than the rest of the step. Furthermore, the swimmers also made use of the stairs in order to reach the refreshment bar located on the balcony with the result that certain amounts of water were left on the stairs. Neither hand rails, non-slip treads nor warning signs were employed by the defendant in connection with the stairs.

Before plaintiff descended the stairway, she noticed that the steps were wet, although they did not appear

to be slick. Plaintiff was careful to pick her way down the stairs so that she did not step in any of the water puddles, but rather only on an area of the step that was damp. As plaintiff stepped on the second step, her foot went "out from under her" and she fell, breaking her ankle.

Plaintiff thereafter brought suit against the defendant corporation and a jury returned a verdict in the amount of $5,000 for the plaintiff. The court entered judgment thereon and the defendant seeks reversal.

Defendant offers three assignments of error:

1. The trial court erred in failing to grant defenddant's motion for dismissal at the close of plaintiff's case on the ground that plaintiff had failed to establish a *prima facie* case of negligence in maintaining the stairway.

2. The court erred in giving Instruction No. 13, setting forth the statutory life expectancy of the plaintiff, when no evidence had been introduced during the trial concerning the life expectancy of the plaintiff or to support the use of the mortality table. In addition, Instruction No. 13 constituted error inasmuch as it conclusively presumed that the plaintiff has a life expectancy of 22.82 years because she was 51 years of age.

3. The trial court erred in refusing to grant the defendant a mistrial, or in the alternative, in refusing to instruct the jury concerning a prejudicial statement made by plaintiff's counsel in closing argument as to the defendant's financial worth.

■ To facilitate an orderly discussion of defendant's first assignment of error, it is initially necessary to define the duty which the law imposes upon the defendant as an owner and operator of a swimming facility. Although the owner or operator of a swimming pool is not an insurer of his business guests' safety, he does, however, owe them a duty of reasonable care in constructing and maintaining his premises in a reasonably safe condition for the purposes for which it is designed

and used. *City of Aurora v. Weeks,* 152 Colo. 509, 384 P.2d 90. See also *Webb v. Thomas,* 133 Colo. 458, 296 P.2d 1036; *Home Public Market v. Newrock,* 111 Colo. 428, 142 P.2d 272.

With the duty of care required by defendant firmly in mind, it must then be determined whether the evidence presented by the plaintiff was sufficient to establish a *prima facie* case of negligence or breach of the duty owed.

It was established in the record that the stairs, upon which the plaintiff fell, were the only ones which spectators could use in going to the spectators' area; that the stairway was also used by swimmers to reach the refreshment area, with the result that the stairway was constantly wet or damp due to the water dripping from the swimmers; that portions of the roughened surface of each step had been worn smooth from the traffic on the stairway; that deterioration of the roughened surface of the steps, in addition to the water deposited thereon, produced a slippery condition; that the defendant failed to provide non-slip treads, hand rails and signs warning of the condition of the stairway; that the plaintiff did not realize the steps were slick, although she did notice that they were wet; and that, although plaintiff proceeded down the steps carefully, her foot slipped out from under her and she fell.

██ When reviewing defendant's motion to dismiss, the evidence must be viewed in the light most favorable to the plaintiff. *Mayer v. Sampson,* 157 Colo. 278, 402 P.2d 185; *Union Pac. R. R. Co. v. Shupe,* 131 Colo. 271, 280 P.2d 1115. Thus, taking this view of the evidence at the close of plaintiff's case, we believe that the trial court properly denied defendant's motion for dismissal since there was sufficient evidence from which a jury could, in applying the reasonable care doctrine, determine that the defendant negligently maintained the steps under the circumstances here present.

██ We hold also that the trial court did not err in

giving Instruction No. 13 on the plaintiff's life expectancy. Defendant's primary objection to the instruction is that it was not supported by the evidence. He complains in particular that the statutory mortality table was not formally introduced into evidence. In our view, the instruction was properly given. Although the mortality table statute was not formally introduced into evidence, the trial court was required to take judicial notice of it, thus making formal proof of the statute unnecessary. The general rule is well established that courts may take judicial notice of the statutes of their own state. This is specifically commented on in 9 Wigmore, *Evidence* (3d ed. 1940) § 2572(1) as follows:

"A court may be expected to dispense with production of evidence of the law of its own sovereignty; for it must be credited with knowledge of it, or at least with competent knowledge where to search for it. No evidence of it need therefore be offered."

We have held that where there is evidence of permanent injury the mortality table *must* be received in evidence. *Rio Grande So. R. R. Co. v. Nichols*, 52 Colo. 300, 123 Pac. 318; *Riss and Company, Inc. v. Anderson*, 108 Colo. 78, 114 P.2d 278. When objection was made to the instruction, the trial court stated that it would permit reopening for the purpose of introducing the statute into evidence; but that it considered the giving of the instruction as accomplishing the same purpose. We agree. There had been evidence of permanent injury to the plaintiff introduced at the trial, and we now hold that under such circumstances, the mortality table may properly be given as an instruction whether or not formally introduced into evidence.

Defendant's final argument with regard to the instruction is that it conclusively presumes that the plaintiff has a life expectancy of 22.82 years without regard to her health, constitution, habits and occupation. Although it is true that the instruction omits these further considerations, nevertheless, there was testimony

108

before the jury concerning the plaintiff's health, constitution, habits and occupation. In view of the verdict of $5,000, the error, if any, would appear to have been harmless.

The allegedly prejudicial statement which forms the basis of defendant's final assignment of error is reproduced as follows:

"In answering Mr. Nordmark as to what they did or didn't do that might have caused this accident, let me respectfully point out that a very large recreational area costing nobody knows how many millions of dollars or hundreds of thousands . . . , but that wasn't in evidence, but you were advised on voir dire that they have a bowling area and you have attended its restaurants and some of the jury panel have been there swimming . . ."

We agree with the trial court's determination that the above statement was not so prejudicial as to warrant a mistrial. The statement, considering the context in which it was made, did not involve an appeal to the passions or prejudices of the jury. More specifically, we construe the statement as more of a reference to the size of defendant's facilities rather than a conscious attempt to offer the wealth of the defendant as a consideration for the jury.

In the last analysis, an award of $5,000 for the suffering, medical expenses and permanent injuries sustained by the plaintiff is indicative that the jury's decision was not motivated by passion or prejudice.

Since counsel for the defendant failed to request the trial court to instruct the jury to disregard the statement, he cannot now complain that the failure of the trial court to do so was error.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE MCWILLIAMS concur.